Sven ROFKAR, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–14214.

Supreme Court of Alaska.

April 20, 2012.

Dan S. Bair, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for Petitioner.

Ann B. Black, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Respondent.

Before: CARPENETI, Chief Justice, FABE, WINFREE, STOWERS, Justices

and MATTHEWS, Senior Justice.*

*OPINION*

PER CURIAM.

## I. INTRODUCTION

Sven Rofkar grew a substantial quantity of marijuana in a house that he rented. After the State Troopers searched the house, Rofkar was charged with four felonies. The charges were brought under separate subsections of AS 11.71.040;[1] all were designated as "misconduct involving a controlled substance in the fourth degree." Specifically, Rofkar was charged with *manufacturing* one ounce or more of marijuana in violation of subsection (a)(2); *possessing* one pound or more of marijuana in violation of subsection (a)(3)(F); *possessing* 25 or more marijuana plants in violation of subsection (a)(3)(G); and *maintaining* a dwelling for keeping a controlled substance in violation of a felony offense, in violation of subsection (a)(5).

A jury found Rofkar guilty on all charges. The superior court merged the two possession charges into the manufacturing charge, but refused to merge the "maintaining" charge. Rofkar therefore stands convicted of two felonies.

The double jeopardy clause of the Alaska Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense."[2] The underlying question in this case is whether two convictions have been imposed on Rofkar for the "same offense" within the meaning of this clause or whether he committed two crimes.

Rofkar raised this issue on appeal to the court of appeals. But the court of appeals declined to consider it. Instead, the court held that its opinion in *Davis v. State*[3] was controlling authority. Because Rofkar did not argue that *Davis* should be overruled in his opening brief, although he did so in his reply brief, the court gave the double jeopardy issue no further consideration.

We conclude that this case should be reviewed by the court of appeals on the merits for two reasons. First, the double jeopardy issue was raised and not waived. Second, it is not clear that *Davis v. State* was decided in accordance with the applicable test for deciding double jeopardy claims set out in this court's opinion in *Whitton v. State*.[4] We explain these reasons below.

## II. DISCUSSION

### A. Double Jeopardy Was Raised.

Rofkar, in his opening brief to the court of appeals, clearly raised the issue of whether his double jeopardy rights were violated. He argued that the test for determining multiplicity that was first expressed by this court in *Whitton v. State* required merger of the maintaining count with the other previously merged counts.[5] Rofkar also dis-

---

* Sitting by assignment under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

1. AS 11.71.040 provided in relevant part when Rofkar was charged:

   (a) [A] person commits the crime of misconduct involving a controlled substance in the fourth degree if the person
   ....
   (2) manufactures or delivers, or possesses with the intent to manufacture or deliver, one or more preparations, compounds, mixtures, or substances of an aggregate weight of one ounce or more containing a schedule VIA controlled substance;
   (3) possesses
   ....
   (F) one or more preparations, compounds, mixtures, or substances of an aggregate weight of one pound or more containing a schedule VIA controlled substance; or

   (G) 25 or more plants of the genus cannabis;
   ....
   (5) knowingly keeps or maintains any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place that is used for keeping or distributing controlled substances in violation of a felony offense under this chapter or AS 17.30....
   AS 11.71.190(b) provides: "Marijuana is a schedule VIA controlled substance."

2. Alaska Const. art. I, § 9.

3. 766 P.2d 41 (Alaska App.1988).

4. 479 P.2d 302 (Alaska 1970).

5. The following quotation from the *Whitton* opinion summarizes the *Whitton* test as well as the problem it was designed to solve and the procedures that should be followed by trial courts when it is used:

cussed at some length federal authority on double jeopardy.

Despite this argument the court of appeals declined to consider the merits of Rofkar's double jeopardy claim. After setting out a portion of the *Whitton* test the court stated:

> We previously applied this test in *Davis v. State* to determine whether the double jeopardy clause prohibits separate convictions for possession of cocaine with intent to deliver and maintaining a dwelling for keeping or distributing cocaine. We concluded that these offenses "differ markedly in the conduct that they prohibit and in the specific social interests that they seek to preserve." We therefore held that the entry of separate convictions did not violate the defendant's protection against double jeopardy.

In his reply brief, Rofkar asserts that the *Davis* case is in error. But we are bound to follow a prior decision unless we are "clearly convinced that the precedent is erroneous or no longer sound because of changed conditions, and that more good than harm would result from overturning the case." Because of the way that this issue has been raised, the parties have not had the opportunity to argue whether the *Davis* case should be overruled. We conclude that Rofkar has failed to make the argument necessary for us to overrule this precedent.[6]

■ In our view, when an appellant adequately raises an issue in an opening brief, the fact that the appellant does not argue that important authority must be overruled, or distinguished, until a reply brief does not justify refusing to consider the issue on its merits. Instead, the court may sua sponte, or on motion of the appellee, grant an opportunity for supplemental briefing. Here Rofkar's failure to discuss the *Davis* case in his initial brief was poor advocacy, but it did not waive his double jeopardy claim.[7]

---

The problem we are faced with has arisen by reason of legislative division or refinement of what may be a unitary criminal episode into a number of statutory offenses, with differences based upon intent or means or method of perpetration. In determining whether several statutory violations constitute the same offense for double jeopardy purposes, we will no longer follow the same-evidence test as enunciated in *Blockburger v. United States* [284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)]....

We now meet the problem in another way, with confidence that it can be solved, by focusing upon the quality of the differences, if any exist, between the separate statutory offenses, as such differences relate to the basic interests sought to be vindicated or protected by the statutes.

The trial judge first would compare the different statutes in question, as they apply to the facts of the case, to determine whether there were involved differences in intent or conduct. He would then judge any such differences he found in light of the basic interests of society to be vindicated or protected, and decide whether those differences were substantial or significant enough to warrant multiple punishments. The social interests to be considered would include the nature of personal, property or other rights sought to be protected, and the broad objectives of criminal law such as punishment of the criminal for his crime, rehabilitation of the criminal, and the prevention of future crimes.

If such differences in intent or conduct are significant or substantial in relation to the social interests involved, multiple sentences may be imposed, and the constitutional prohibition against double jeopardy will not be violated. But if there are no such differences, or if they are insignificant or insubstantial, then only one sentence may be imposed under double jeopardy. Ordinarily the one sentence to be imposed will be based upon or geared to the most grave of the offenses involved, with degrees of gravity being indicated by the different punishments prescribed by the legislature.

In the event the trial judge decides, under the test we have established, that multiple sentences may be imposed without contravening the double jeopardy provision, the reasons for his determination must affirmatively appear in the record. There should be a statement by the judge of the relevant factual or other considerations which led him to such a decision, in order that the constitutional legitimacy of the multiple sentences may be fully reviewed on appeal.

*Whitton*, 479 P.2d at 312 (citations omitted).

6. *Rofkar v. State*, Mem. Op. & J. No. 5683, 2011 WL 746439 at *12–13 (Alaska App., Mar.2, 2011) (citations omitted).

7. The State raised *Davis* in the superior court in response to Rofkar's argument based on *Whitton*. Thus, Rofkar's counsel knew that the State would be relying on the case on appeal. This case does not therefore fall within the ethical rule requiring the disclosure of directly applicable authority that has not been disclosed by opposing counsel. *See* Alaska R. Prof. Conduct 3.3. Counsel's failure was not unethical, but it was an unwise tactic from the standpoint of persuasion.

## B. It Is Unclear Whether *Davis* Accords With The *Whitton* Test.

The dispositive language in the *Davis* opinion is as follows:

> While Davis' violation of both statutes resulted from a single course of action, the offenses differ markedly in the conduct that they prohibit and in the specific social interests that they seek to preserve. Davis' double jeopardy rights were not infringed by the entry of separate convictions and sentences on these charges. *See State v. Dunlop,* 721 P.2d 604, 607–08 (Alaska 1986).[8]

*Davis* thus cited *State v. Dunlop* rather than *Whitton*. But *Dunlop* decided a separate question. The question in *Dunlop* was whether one or multiple crimes were committed when a defendant by a single act injured or killed two or more people. In *Dunlop* we concluded that in an earlier case, *Thessen v. State,*[9] we had erred "in applying *Whitton* to multiple violations of a single statute."[10] Although *Dunlop* clarified that the *Whitton* test does not apply where one statute has been violated by a single course of conduct that results in multiple deaths or injuries, the *Dunlop* court made it clear that *Whitton* would otherwise continue to apply.[11]

Further, the *Davis* opinion takes the form of a categorical ruling that possession of illegal drugs and maintaining a dwelling used for keeping illegal drugs are always separate crimes. But *Whitton* requires a comparison of the different statutes *"as they apply to the facts of the case,* to determine whether there were involved differences in intent or conduct."[12] If case-specific differences in intent or conduct are found to exist, then such differences must be evaluated in light of the "basic interests of society to be vindicated or protected...."[13] If the court finds that "such differences in intent or conduct are significant or substantial in relation to the social interests involved, multiple sentences may be imposed," but if there are no such differences "or if they are insignificant or insubstantial," only one conviction can be imposed.[14] It does not appear from the text of the *Davis* decision that a comparison was made between the intent or conduct involved in the different statutes as applied to the facts of the case. It is also not evident that the legislative history underlying the maintaining subsection of AS 11.71.040 was consulted to determine the social interests sought to be protected.

Finally, the court of appeals recognized in its *Rofkar* opinion the possibility that "under some circumstances, Alaska's double jeopardy clause might be violated if a defendant receives separate convictions for possessing drugs and for maintaining a dwelling or building to keep those same drugs."[15] The recognition of this possibility seems inconsistent with the use of the *Davis* case as categorical contrary precedent.

## III. CONCLUSION

For these reasons, we VACATE the decision of the court of appeals and REMAND this case to the court of appeals for consideration of the issue whether Rofkar's double jeopardy rights were violated by the entry of multiple convictions under the facts and circumstances of this case.

---

**8.** *Davis,* 766 P.2d at 46.

**9.** 508 P.2d 1192 (Alaska 1973).

**10.** *Dunlop,* 721 P.2d at 608–09. *Thesson* held that only one homicide conviction could be entered against a defendant who had set a fire that killed 14 people.

**11.** *Id.* at 608 n. 17 ("We do not disturb our holding in *Whitton* here.").

**12.** 479 P.2d 302, 312 (Alaska 1970) (emphasis added).

**13.** *Id.*

**14.** *Id.*

**15.** *Rofkar v. State,* Mem. Op. & J. No. 5683, 2011 WL 746439 at *11 n. 20 (Alaska App., Mar.2, 2011) (citing *Maness v. State,* 49 P.3d 1128, 1139 (Alaska App.2002) (Mannheimer, J., concurring)).