NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DAVID ALAN LINDEN,

Appellant,

v.

MUNICIPALITY OF ANCHORAGE,

Appellee.

Court of Appeals No. A-13097
Trial Court No. 3AN-17-00680 CR

O P I N I O N

No. 2712 — November 5, 2021

Appeal from the District Court, Third Judicial District, Anchorage, Brian K. Clark, Judge.

Appearances: Matthew A. Michalski, Attorney at Law, Anchorage, for the Appellant. Sarah E. Stanley, Municipal Prosecutor, and Kathryn R. Vogel, Municipal Attorney, Anchorage, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge WOLLENBERG.

David Alan Linden assaulted his girlfriend in the presence of their nine-month-old child. Based on this incident, a jury found Linden guilty of both assault and family violence under the Anchorage Municipal Code, but acquitted him of child abuse.[1]

At trial, Linden's girlfriend, Mary Otton, testified that she saw Linden slap their infant son, wrap him in a blanket from head-to-toe, and place him in a plastic storage container before attempting to cover the container with a lid. When Otton tried to intervene, Linden held her down and punched her. According to Otton, during the ensuing altercation, Linden tore off Otton's shirt and struck her twice in the head and several times in the lower back, causing injuries which required later medical treatment. The altercation started in the bedroom of their shared apartment, where the child was present, and then continued into the living room and outside of the building when Otton tried to escape.

Following the verdicts, Linden argued that, under the double jeopardy clauses of both the Alaska and United States Constitutions, the district court was required to merge the guilty verdicts for assault and family violence into a single conviction.[2] The court disagreed, ruling that the crime of family violence protected a societal interest distinct from assault and that, under the facts of this case, the crime of family violence had a different victim, the child. The court therefore entered separate convictions for assault and family violence.

Linden now appeals. We conclude that Linden properly received separate convictions for assault and family violence, and we therefore affirm.

---

[1] Anchorage Municipal Code (AMC) 08.10.010(B)(1) and AMC 08.10.050(B), respectively. The jury also found Linden guilty of tampering with official proceedings under AMC 08.30.080(A)(3), but this conviction is not implicated by Linden's appeal.

[2] U.S. Const. amend. V; Alaska Const. art. I, § 9.

*Our analysis of Linden's claim*

Under both the United States and the Alaska Constitutions, a person may not be twice put in jeopardy "for the same offense."[3] This prohibition protects not only against successive prosecutions for the "same offense" following a conviction or an acquittal, but also against multiple convictions and punishments for charges that amount to the "same offense" within a single prosecution.[4] The question presented in this appeal is whether the Anchorage municipal crimes of family violence and assault constitute the "same offense" for purposes of the prohibition on imposing multiple punishments within a single prosecution.

Under the Anchorage Municipal Code, "[a] person commits the crime of family violence when the person commits the crime of assault . . . with knowledge or reckless disregard of the presence of a child or children."[5] A person commits the crime of assault, in relevant part, when the person "recklessly causes physical injury to another person."[6]

Based on these provisions in the code, it is impossible to commit the crime of family violence without also committing the crime of assault. Given this relationship

---

[3] U.S. Const. amend. V ("No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb[.]"); Alaska Const. art. I, § 9 ("No person shall be put in jeopardy twice for the same offense."). The double jeopardy clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784 (1969).

[4] *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Todd v. State*, 917 P.2d 674, 677, 681 (Alaska 1996).

[5] AMC 08.10.050(B). For purposes of the offense of family violence, "presence of a child or children" is defined as "when a child or children are in the dwelling, vehicle, or other place where the assault has occurred." AMC 08.10.050(c).

[6] AMC 08.10.010(B)(1).

between the offenses, Linden argues that assault is a lesser included offense of family violence and that his convictions for assault and family violence must therefore merge.

But the relationship between the elements of the two offenses does not alone answer the question of whether the offenses merge.[7]  We therefore turn to the analysis of Linden's claim under both state and federal double jeopardy law.

*Do the offenses merge under Alaska double jeopardy law?*

The Alaska Supreme Court's decision in *Whitton v. State* is the seminal case on the doctrine of merger — *i.e.*, whether two crimes that violate separate statutes and are charged in a single prosecution constitute a single offense for double jeopardy purposes under the Alaska Constitution.[8]

Under the *Whitton* test, a court must compare the different statutory provisions, as applied to the facts of the case, and evaluate any differences in intent or conduct in light of the societal interests to be vindicated.[9]  If the differences in intent or conduct are "insignificant or insubstantial" in relation to the societal interests, the court may only enter a single conviction and sentence.[10]  "The social interests to be considered . . . include the nature of personal, property or other rights sought to be protected, and the broad objectives of criminal law such as punishment of the criminal for his crime, rehabilitation of the criminal, and the prevention of future crimes."[11]

---

[7]  *See Todd*, 917 P.2d at 677, 681.

[8]  *Whitton v. State*, 479 P.2d 302, 312 (Alaska 1970).

[9]  *Id.*

[10]  *Id.* at 312; *see also Rofkar v. State*, 273 P.3d 1140, 1143 (Alaska 2012).

[11]  *Whitton*, 479 P.2d at 312.

The supreme court's decision in *Tuckfield v. State* provides the strongest support for Linden's position that his two convictions must merge.[12] In *Tuckfield*, the supreme court stated, "It is well settled that double jeopardy is violated by conviction of both an offense and a lesser included offense, unless those convictions arise from separate conduct."[13] The court characterized the "governing principle" for determining whether one offense is a lesser included offense of another as "whether the facts in evidence demonstrate one could have committed the greater offense without also having committed the offense of lesser magnitude."[14]

Based solely on *Tuckfield*, one could argue that Linden's convictions should merge. But the supreme court has subsequently recognized that *Whitton* sets out "the sole test for multiple punishment of the same offense under the Alaska Constitution."[15] The court has also clarified that, under *Whitton*, a single act can potentially result in multiple convictions.[16]

---

[12] *Tuckfield v. State*, 621 P.2d 1350, 1352-53 (Alaska 1981).

[13] *Id.* at 1352.

[14] *Id.*

[15] *Johnson v. State*, 328 P.3d 77, 88 & nn.63-64 (Alaska 2014); *see also Todd v. State*, 917 P.2d 674, 681-83 (Alaska 1996) (recognizing that "*Whitton* is the seminal case and still controlling precedent in this area of law").

[16] *See State v. Dunlop*, 721 P.2d 604, 607-09 (Alaska 1986). The supreme court has disavowed any suggestion in its caselaw that the *Whitton* test does not apply when one statute has been violated by a single course of conduct resulting in multiple injuries or deaths. *Johnson*, 328 P.3d at 88 n.63 (discussing *Rofkar v. State*, 273 P.3d 1140, 1143 (Alaska 2012)). Rather, the supreme court has said, "the *Whitton* test applies equally well in cases of multiple statutes, multiple counts of violating a single statute, and multiple victims or lone victims." *Id.*

In *Todd v. State*, decided fifteen years after *Tuckfield*, the supreme court declined to follow a strict interpretation of *Tuckfield* and declared that "*Whitton* is the seminal case and still controlling precedent in this area of law."[17] The defendants in *Todd* were convicted of both felony murder (with robbery as the predicate felony) and robbery.[18] The supreme court acknowledged that a defendant cannot be convicted of felony murder with robbery as a predicate without also having been convicted of robbery.[19] But the court nevertheless concluded that robbery was not a lesser included offense of felony murder. The court reached its conclusion, in part, by considering the legislative intent behind the felony murder statute, explaining, "The felony-murder provision does not overlap with other offenses but rather enhances them, and . . . the intent of the legislature to allow multiple punishments is clear."[20]

The supreme court has also applied *Whitton* in concluding that a defendant who injures multiple people through a single act commits a separate offense as to each victim. Initially, in *Thessen v. State*, the court held that only a single conviction should enter when, through a single act without intent to harm multiple victims, the defendant injures multiple people.[21] But in *State v. Dunlop*, the court overruled *Thessen*, explaining, "Instead of focusing on the accused's intent we must look at the consequences. Where an act of violence injures multiple victims, there are as many

---

[17] *Todd*, 917 P.2d at 681-83.

[18] *Id.* at 676.

[19] *Id.* at 682.

[20] *Id.*

[21] *Thessen v. State*, 508 P.2d 1192, 1195 (Alaska 1973), *overruled by State v. Dunlop*, 721 P.2d 604 (Alaska 1986).

punishable *offenses* as there are victims."[22]  Accordingly, under *Dunlop*, "[t]he identity of the victim represents different conduct — it represents conduct directed at that victim," and entry of conviction for each victim is appropriate.[23]

Under *Whitton* — as interpreted and applied in *Todd* and *Dunlop* — we must look to the legislative history of the family violence ordinance, as well as the identified harm of Linden's actions in light of the intent and conduct encompassed by the law's provisions, in order to determine how many offenses occurred.

The Anchorage Assembly created the crime of family violence in 2000.[24] The new crime was part of a package of offenses aimed specifically at redrafting the child abuse ordinances.[25]  Other offenses enacted or amended by the same ordinance included the offense of child abuse,[26] child neglect,[27] and contributing to the delinquency of a minor.[28]

---

[22]  *Dunlop*, 721 P.2d at 609 (emphasis in original).

[23]  *Id.*  In *Dunlop*, the supreme court initially disclaimed its reliance on *Whitton*. *Id.* at 608 n.17; *see also Rofkar v. State*, 273 P.3d 1140, 1143 (Alaska 2012) ("*Dunlop* clarified that the *Whitton* test does not apply where one statute has been violated by a single course of conduct that results in multiple deaths or injuries[.]").  But in *Johnson v. State*, the supreme court described *Dunlop* as an application of the *Whitton* test and "disavow[ed] the dicta in *Rofkar* that indicates that different tests for multiple punishment apply in different contexts." *Johnson v. State*, 328 P.3d 77, 88 & n.63 (Alaska 2014).

[24]  Anchorage Ordinance (AO) No. 2000-95, § 5 (July 18, 2000).

[25]  *Id.*; Municipality of Anchorage, Assembly Memorandum No. AM 565-2000, *AO 2000-95; Revisions to Title 8* (May 23, 2000).

[26]  AMC 08.10.030 (repealed and reenacted).

[27]  AMC 08.10.040.

[28]  AMC 08.10.060; *see* AO No. 2000-95 at §§ 1, 4, 6.

An Assembly Memorandum prepared for the meeting at which the ordinance was first introduced explained that each new section criminalizing conduct involving a child was "aimed at a specific type of harm":

> The original code section [criminalizing child abuse] is repealed and four new sections, each aimed at a specific type of harm, are enacted. The changes are designed to provide a comprehensive enforcement tool that reflects increased awareness of the problems and seeks to more accurately address the distinctions between physical abuse, physical neglect, and other harms which may occur.[29]

This memorandum, and the historical context for the enactment of the crime of family violence, demonstrate that the Anchorage Assembly made a legislative determination that the conduct constituting family violence — assault in the presence of a child — constitutes a distinctly separate harm against a child, one which the current assault offense did not sufficiently vindicate (at least when the child was not the victim of the assault).

This conclusion is further supported by the Anchorage Assembly's decision to make both assault and family violence class A misdemeanors, and to set out both as punishable under AMC 08.05.020(H)(1), with no additional minimum penalty that otherwise distinguishes the offenses.[30] If the new crime of family violence were intended to overlap with assault, rather than enhance it, then the entire crime of family violence

---

[29]   Assembly Memorandum No. AM 565-2000, at 1.

[30]   *See* AMC 08.10.010(E); AMC 08.10.050(D); AMC 08.05.025.

would be surplusage.[31]  The Assembly must therefore have intended for separate convictions when the assault and family violence resulted in separate injuries.[32]

Here, Linden caused injury to his girlfriend by assaulting her, and he caused injury to his child by committing the assault in the presence of his child.  In essence, under the facts of this case, the two crimes had separate victims and thus constituted separate offenses.

We therefore conclude that, under the facts of this case, the double jeopardy clause of the Alaska Constitution does not require merger of Linden's convictions for assault and family violence.

*Do the offenses merge under federal double jeopardy law?*

In *Blockburger v. United States*, the United States Supreme Court announced a test for determining whether two statutory provisions constitute the "same offense" under the federal constitution:  "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be

---

[31]  *See Lampkin v. State*, 141 P.3d 362, 364 (Alaska App. 2006) (recognizing that if the crime of promoting contraband merged with the crime of fourth-degree controlled substance misconduct — both class C felonies — the practical effect would be that prisoners would face no greater punishment for possessing the drugs in jail than if they had possessed the drugs elsewhere).

[32]  *See Todd v. State*, 917 P.2d 674, 682 (Alaska 1996) ("The felony-murder provision does not overlap with other offenses but rather enhances them, and, as we noted above, the intent of the legislature to allow multiple punishments is clear."); *see also Kodiak Island Borough v. Roe*, 63 P.3d 1009, 1014 n.16 (Alaska 2003) ("We assume that words added to a statute are not mere surplusage.").

applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[33]

In subsequent cases, however, the Supreme Court has clarified that, in the context of multiple punishments arising from a single prosecution — *i.e.*, in the merger context — the role of the double jeopardy clause of the federal constitution is limited to protecting a defendant against receiving more punishment than the legislature intended.[34] Thus, in the single-prosecution context, the Supreme Court has treated the *Blockburger* test as a tool of statutory interpretation — *i.e.*, a tool for determining, presumptively, whether the legislature intended to preclude separate conviction and punishment for two offenses.[35]

---

[33]  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

[34]  *See, e.g.*, *Garrett v. United States*, 471 U.S. 773, 779 (1985) ("Insofar as the question is one of legislative intent, the *Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of Congress."); *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983) ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."); *Albernaz v. United States*, 450 U.S. 333, 340 (1981) ("The *Blockburger* test . . . should not be controlling where, for example, there is a clear indication of contrary legislative intent."); *see also Todd*, 917 P.2d at 677 ("Any indication the Court once may have given that *Blockburger* provided a unitary test for determining whether offenses were the same and whether the Double Jeopardy Clause was violated has since been disavowed.").

[35]  *Albernaz*, 450 U.S. at 340 ("The *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent."); *see also Ball v. United States*, 470 U.S. 856, 861 (1985) ("For purposes of applying the *Blockburger* test in this setting as a means of ascertaining congressional intent, 'punishment' must be the equivalent of a criminal conviction and not simply the imposition of sentence.").

If the offenses fail the *Blockburger* test — *i.e.*, if only one of the offenses contains an element that the other does not — then multiple punishments and convictions are presumptively barred.[36] But this presumption is rebuttable by clear legislative intent to authorize separate punishments: "where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent."[37] In other words, "the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history."[38]

The crimes of assault and family violence constitute the "same offense" under the *Blockburger* test: the crime of assault does not require proof of a fact that the crime of family violence does not also require. But, for the reasons we have already discussed, both the statutory context and legislative history of the family violence ordinance demonstrate a clear legislative intent to allow multiple punishments and convictions under Alaska law. The Assembly Memorandum expressly indicated that the family violence ordinance was aimed at "a specific type of harm" — *i.e.*, a "different societal interest" for purposes of *Whitton*. And the enactment of a new crime, with an equivalent penalty, demonstrates an intent that the offense of family violence would not generally merge with the underlying assault.

---

[36] *Todd*, 917 P.2d at 678 (citing *Whalen v. United States*, 445 U.S. 684, 691-92 (1980)).

[37] *Whalen*, 445 U.S. at 692.

[38] *Garrett*, 471 U.S. at 779; *Hunter*, 459 U.S. at 368-69; *see also Starkweather v. State*, 244 P.3d 522, 529 (Alaska App. 2010) ("[U]nder the federal double jeopardy test, the question of whether the law permits separate convictions and punishments is answered by ascertaining whether the legislature intended to allow separate convictions and punishments.").

Because the Assembly intended to allow multiple punishments under the applicable state law, the federal double jeopardy rule is satisfied.[39] We therefore conclude that the double jeopardy clause of the United States Constitution does not require merger of Linden's convictions for assault and family violence.[40]

*Conclusion*

The judgment of the district court is AFFIRMED.

---

[39] *Hunter*, 459 U.S. at 368.

[40] The fact that the two charges, when pursued in a single prosecution, do not merge does not necessarily mean that the Municipality can pursue the two charges in successive prosecutions. *See* 5 Wayne LaFave et al., *Criminal Procedure* § 17.4(b), at 87-107 (4th ed. 2015) (discussing the progression of federal case law regarding the double jeopardy clause in the successive prosecution context); *State v. Williams*, 730 P.2d 806, 806-07 (Alaska 1987) (concluding that separate prosecutions for two offenses based on essentially the same evidence violated the double jeopardy clause of the Alaska Constitution).